SHEILA RIVERA a/k/a CIARA REYES,

         Plaintiff,

  - versus -

ANTHONY J. ANNUCCI, Acting Commissioner of the New York State Department of Corrections and Community Supervision, former Executive Deputy Commissioner, Deputy Commissioner, and Counsel of New York State Department of Correctional Services, in his individual capacity; BRIAN FISCHER, former Commissioner of New York State Department of Correctional Services, in his individual capacity; TERRENCE X. TRACY, Chief Counsel for New York State Division of Parole, in his individual capacity; JOHN/JANE DOES 1-20 (New York State Department of Correctional Services Supervisory, Training and Policy Personnel; New York State Division of Parole Supervisory, Training, and Policy Personnel; New York State Board of Parole Supervisory, Training, and Policy Personnel), in their individual capacities,

         Defendants.

MEMORANDUM
AND ORDER
13-CV-1239 (JG)

A P P E A R A N C E S:
  SEWARD & KISSEL LLP
    One Battery Park Plaza
    New York, NY 10004

  By: Michael G. Considine
     Thomas Ross Hooper
     *Attorneys for Plaintiff*

  ERIC T. SCHNEIDERMAN
  Attorney General of the State of New York
    120 Broadway, 24th Floor
    New York, NY 10271

  By: Michael J. Keane
     *Attorney for Defendants*

JOHN GLEESON, United States District Judge:

Sheila Rivera, who is also known as "Ciara Reyes," brings this action pursuant to 42 U.S.C. § 1983. In her amended complaint, Rivera claims that her constitutional rights were violated when, after serving more than six years in prison, she was subjected to a term of post-release supervision ("PRS") that was imposed not by a judge, but instead by officials at the New York State Department of Corrections and Community Supervision ("DOCCS"). The remaining defendants in this case,[1] current and former officials of the New York State Department of Correctional Services ("DOCS"), the New York State Division of Parole ("DOP"),[2] and the New York State Board of Parole ("BOP") (the "Defendants"), move to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure. They contend that the amended complaint fails to state a cause of action for violations of Rivera's constitutional rights and fails to adequately allege the personal involvement of Defendants in any such action, and in any event that they are entitled to qualified immunity with respect to any such claim.

For the reasons discussed below, the motion is granted in part and denied in part. Specifically, the motion to dismiss Rivera's claim that she was denied due process of law is denied. The motion to dismiss her claim that she was subjected to a violation of her double jeopardy rights is granted.

BACKGROUND

A.  *Post-Release Supervision in New York*

The 1998 enactment in New York of "Jenna's Law" eliminated parole for violent felony offenders in New York and made PRS a mandatory component of sentences of such

---

[1] The United States Marshals Service filed a motion to dismiss for failure to prosecute, which was granted on December 2, 2013.

[2] DOCS merged with the DOP in March of 2011 to become DOCCS. Amended Complaint ("Compl.") ¶ 2, n.2.

offenders.  *See* 1998 N.Y. Laws Ch. 1, § 15 (codified at N.Y. Penal Law § 70.45) (later amended); *see generally Vincent v. Yelich*, 718 F.3d 157, 161-62 (2d Cir. 2013), *cert. denied sub nom. Annucci v. Vincent*, No. 14-360, 2015 WL 132871 (U.S. Jan. 12, 2015).  PRS is similar to parole, but "a critical distinction is that the period of PRS is *added to* the maximum prison term imposed by the court, thus increasing the effective length of the sentence, while in contrast a released offender's time on parole is served after release from prison prior to the expiration of the maximum prison term imposed by the court."  *People v. Rogers*, No. 4608/99, 873 N.Y.S.2d 514 (Kings Cnty. Sup. Ct. Oct. 28, 2008) (emphasis in original).  With Jenna's Law, "certain violent felonies that had been theretofore punished by the imposition of indeterminate sentences were to be punished with a combination of a determinate sentence and a mandatory term of PRS."  *Scott v. Fischer,* 616 F.3d 100, 103 (2d Cir. 2010).  The pertinent part of the act provided that "each determinate sentence also includes, as a part thereof, an additional period of post-release supervision," a violation of which could be punished by up to five years.  *See Vincent*, 718 F.3d at 161 (citing 1998 N.Y. Laws Ch. 1, § 15 (later amended)).

At the time Jenna's Law was passed, there was no requirement that a judge impose the term of PRS at sentencing or any other time.  *See Scott,* 616 F.3d at 103.  As a result, terms of PRS were imposed administratively, by the DOCS.  *See id.* at 102.  The failure of a court to inform a defendant of his or her PRS term at the time of a plea of guilty was found unconstitutional in 2005 by the New York Court of Appeals in *People v. Catu*, 4 N.Y.3d 242, 245 (2005).  The Court found that a defendant "must be aware of the postrelease supervision component of that sentence in order to knowingly, voluntarily and intelligently choose among alternative courses of action . . . ."  *Catu*, 4 N.Y.3d at 245.  The Court noted that the terms of PRS include compliance with curfews, restrictions on travel, and other conditions during the

3

period of supervision, and a violation of one of those conditions could result in reincarceration of up to five years. *See id.*

On June 2, 2006, the Second Circuit declared that an administratively-imposed term of PRS violated the federal constitutional right to due process. *See Earley v. Murray*, 451 F.3d 71, 76-77 (2d Cir. 2006) ("*Earley I*") (vacating and remanding denial of habeas petition on these grounds); 462 F.3d 147, 150 (2d Cir. 2006) ("*Earley II*") (denying petition for rehearing and acknowledging that the decision "may call into question the validity of the PRS components of numerous sentences").

Despite *Catu* and *Earley*, it was not until 2008 that the New York Court of Appeals ruled that only judges could impose terms of PRS and that the DOCS had acted unlawfully when it imposed such terms administratively. *See People v. Sparber*, 10 N.Y.3d 457, 469-70 (2008); *Garner v. New York State Dep't of Correctional Servs.*, 10 N.Y.3d 358, 362-63 (2008)). Then, on June 30, 2008, the New York Legislature passed Correction Law § 601-d, which (1) required DOCS to identify defendants who had been subjected to administratively-imposed PRS and (2) created a procedure for determining whether resentencing was appropriate. *See Joyner-El-Quwi-Bey v. Russi*, No. 09-CV-2047 (JG), 2010 WL 1222804, at *1 (E.D.N.Y. March 23, 2010), *aff'd* 439 F. App'x 36 (2d Cir. 2011).

This case concerns a term of PRS that was imposed unlawfully by DOCS in 2007, before *Sparber*, *Garner*, and the enactment of Correction Law § 601-d. Plaintiff complains that the imposition and enforcement of that term of supervision violated her federal constitutional rights.

B.      *Facts*[3]

On May 22, 2001, Sheila Rivera was sentenced to a determinate eight-year term of imprisonment by Justice Lawrence Knipel of the Kings County Supreme Court. Compl. ¶ 14. At the time of sentencing, Justice Knipel did not impose a term of PRS. *Id*. In September 2007, while Rivera was still incarcerated, she was approached by a DOP employee and told that, pursuant to DOP policy, she had to sign a certificate acknowledging that she would be subject to a term of PRS upon her release. *Id*. ¶ 15. Rivera objected but signed the certificate in order to obtain her release, and she was released from custody on October 5, 2007, after serving more than six years of her sentence. *Id*. ¶¶ 15, 19. Upon her release, she was subject to a term of PRS that included a curfew and other restrictions, such as a restriction on out-of-state travel without permission. She was also required to report weekly or bi-weekly to her parole officer. *Id*. ¶¶ 17-18.

Rivera was subjected to two additional periods of incarceration for violations of the terms of her PRS. The first violation was based on two arrests. On May 23, 2008, Rivera was arrested and spent five days in jail on a charge that was dismissed on October 29, 2008. *Id*. ¶ 28. Then, on November 5, 2008, Rivera was arrested again, in Times Square, while celebrating the results of the presidential election. She was released the next day, and the case was later dismissed. *Id*. ¶ 31. Based on these two arrests and a violation of her curfew, a parole officer obtained a warrant for Rivera's arrest for violations of her PRS. *Id*. ¶¶ 31-34. Rivera was in jail for these violations from November 12, 2008, to December 18, 2008. *Id*. ¶¶ 34, 43. On November 27, 2008, while she was in jail, her original eight-year determinate sentence expired. *Id*. ¶ 35.

---

[3] The facts set forth here are drawn from the amended complaint; I assume them to be true for the purposes of Defendants' motion to dismiss. *See, e.g.*, *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 135 (2d Cir. 2013).

On October 14, 2008, Defendant Terrence X. Tracy wrote to Justice Michael Brennan of Kings County Supreme Court to request a resentencing. On December 5, 2008, while Rivera was still serving time for her PRS violations, she was re-sentenced in Kings County Supreme Court. She was given an additional term of PRS of two-and-one-half years starting from October 5, 2007, her original release date. *Id*. ¶¶ 37-39. She appealed that reimposition of a PRS term on January 5, 2009, but that appeal was rejected on July 24, 2009. *Id*. ¶¶ 48, 54.

After she was released on December 18, 2008, Rivera was again subjected to PRS conditions that included travel restrictions and a curfew. *Id*. ¶¶ 43, 45. She was charged with another violation because of an arrest on March 27, 2009. *Id*. ¶¶ 49-50. She was sentenced to 15 months' imprisonment for this violation beginning June 30, 2009. *Id*. ¶ 51.

On February 23, 2010, the New York Court of Appeals held, in *People v. Williams*, 14 N.Y.3d 198 (2010), that the Double Jeopardy Clause of the United States Constitution prohibits resentencing a defendant to a term of PRS after the defendant has already served the determinate term of imprisonment and has been released from prison. On March 9, 2010, Justice Brennan vacated the portion of Rivera's sentence that imposed PRS, and she was released the next day. Compl. ¶ 59.

C.        *Procedural History*

Rivera filed a *pro se* complaint on March 8, 2013 (ECF No. 1) alleging violations of her constitutional rights and seeking damages for the periods during which she claims she was unlawfully subjected to supervision and detention. Brian Fischer, one of the defendants in that complaint, moved to dismiss. When that motion was argued on March 20, 2014, I informed the parties of my view that Rivera's claims had sufficient substance that the best course of action would be to appoint counsel to represent her. That led to the appointment of Seward & Kissel

6

LLP as counsel for the plaintiff, and on April 11, 2014, I endorsed counsel's unopposed proposal that an amended complaint be filed within four weeks of the Second Circuit's disposition of a petition for rehearing *en banc* in the *Vincent* and *Earley* cases referred to above, as well as in *Betances v. Fischer*, a case decided on the same day as *Vincent* and containing similar claims. *See Betances v. Fischer* 519 F. App'x 39, 41 (2d Cir. 2013). Rivera's amended complaint was filed on July 25, 2014 (ECF No. 36). It names, among others, Anthony J. Annucci, Acting Commissioner of the DOCCS; Brian Fischer, former Commissioner of the DOCS; and Terrence X. Tracy, Chief Counsel for the DOP as Defendants.[4]

The amended complaint alleges a deprivation of Rivera's "rights, remedies, privileges and immunities …, and of rights guaranteed by the Fourth, Fifth and Fourteenth Amendments," Compl. ¶ 88, but the briefing of the instant motion to dismiss clarified that she seeks damages and other relief based on alleged "violation[s] of her Due Process and Double Jeopardy rights." Pl. Opp. (ECF No. 42) at 1.

## DISCUSSION

A.  *Legal Principles*

   1.  *The Standard of Review*

Defendants argue that Rivera's amended complaint (1) fails to state a claim under 42 U.S.C. § 1983 for unlawful confinement or supervision under the Fourth, Fifth, or Fourteenth Amendments; and (2) fails to sufficiently allege the personal involvement of Defendants in the constitutional violations. *See* Fed. R. Civ. P. 12(b)(6). They also assert that they are entitled to qualified immunity for their actions.

---

[4] Rivera also names John/Jane Does 1-20, defined as DOCS Supervisory, Training, and Policy Personnel; DOP Supervisory, Training, and Policy Personnel; and BOP Supervisory, Training, and Policy Personnel.

In deciding a motion to dismiss, "I must assume the truth of all well-pleaded factual allegations, draw all inferences in the light most favorable to the plaintiff[], and grant the motion only if the complaint so viewed fails 'to raise a right to relief above the speculative level.'" *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 367 (E.D.N.Y. 2012) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). "However, 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.'" *Dupree v. Local 32BJ*, No. 10-CV-1894 (JG), 2010 WL 3430530, at *2 (E.D.N.Y. Aug. 30, 2010) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

2. *Qualified Immunity*

As the Second Circuit has explained,

> Qualified immunity protects public officials performing discretionary functions from personal liability in a civil suit for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.

*Lore v. City of Syracuse*, 670 F.3d 127, 162 (2d Cir. 2012) (internal quotation marks, citations, and alterations omitted). "A right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003) (citation and alterations omitted). Qualified immunity is an affirmative defense, and Defendants bear the burden of proof. *See Vincent*, 718 F.3d at 166.

B.	*The Sufficiency of the Allegations Regarding the Imposition and Enforcement of the PRS Term*

Defendants' main contention, which was emphasized by their counsel at oral argument, is that the deprivations of liberty Rivera complains about, that is, the constraints imposed by supervision and the periods of detention resulting from violations of the terms of that supervision, had nothing to do with the administratively-imposed term of PRS and everything to do with "judicially-imposed PRS," owing to the fact that Rivera was released after serving only sixth-sevenths of her determinate eight-year prison term. *See* Def. Br. (ECF No. 41) 10-12 ("[I]t is clear that plaintiff was never under 'administrative' PRS.").

The simple answer to this argument is Rivera alleges otherwise. On a motion to dismiss, I am required to accept that allegation as true. That means assuming that Rivera began a period of administratively imposed PRS on October 5, 2007. *See* Compl. ¶¶ 15-19. The "Inmate Information" printout attached to Defendants' brief is not properly before the Court on a motion to dismiss.

More importantly, Defendants' argument runs counter to the statement by the New York Court of Appeals in *People v. Williams* that a defendant who is conditionally released after serving sixth-sevenths of a determinate sentence "immediately commences serving the imposed term of PRS." 19 N.Y.3d 100, 104 (2012) (citing N.Y. Penal Law § 70.45[5]). In short, I conclude that Rivera has adequately pled that the constitutional violations she complains about resulted from the administratively-imposed PRS term.

C.	*The Sufficiency of the Allegations of Personal Involvement*

Fischer and Annucci contend that the amended complaint fails to allege that they were involved in any way in the imposition of the unlawful term of PRS on Rivera. I disagree.

9

The Second Circuit has observed that a supervisory official[5] may be personally involved in a constitutional violation if he or she created a policy or custom pursuant to which the violation occurred, or allowed the continuance of such a policy or custom. *See Scott*, 616 F.3d at 110. *See also Vincent*, 718 F.3d at 173 ("A supervisory official may be liable in an action brought under § 1983 if he 'exhibited deliberate indifference to the rights of inmates *by failing to act on information indicating that unconstitutional acts were occurring.*'" (emphasis in *Vincent*) (quoting *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995) ) (additional citations omitted). The complaint alleges that Fischer and Annucci were policymakers with respect to DOCS's decision to administratively impose a term of PRS on Rivera, and that the imposition of that term pursuant to the policy occurred substantially after the Second Circuit held it to be in violation of the federal Constitution. *See* Compl. ¶¶ 9-10. Given the positions of these two defendants, the allegation that they were among the relevant policymakers is plausible.

However, I agree that the amended complaint fails to adequately allege the personal involvement of these defendants in the asserted double jeopardy violation. That violation occurred, according to the amended complaint, on December 5, 2008, when Justice Brennan imposed a term of PRS after Rivera had already been released from custody on her eight-year term and after that term had expired. *See* Compl. ¶¶ 35-38. The only participation by Defendants in that act was the letter written by Tracy on October 14, 2008, informing the court that under New York law, Rivera was to be resentenced. *See id*. ¶ 30. But in this context, it is the successive punishment itself – something that can only be accomplished by a judge – that constitutes the double jeopardy violation. In Rivera's case, that judge listened to a double jeopardy challenge to the resentencing, rejected that challenge, and imposed a term of PRS in

---

[5] During the relevant period, Annucci was Deputy Commissioner and Counsel to DOCS (1989-2007) and Executive Deputy Commissioner of DOCS (2007-13), while Fischer was Commissioner of DOCS from 2007 until 2013. *See* Compl. ¶¶ 9-10.

10

circumstances that the New York Court of Appeals subsequently declared in *Williams* to constitute a violation of the Double Jeopardy Clause. *See* 14 N.Y.3d at 217. As a matter of law, I conclude that a state officer's compliance with a state law directing him to inform a court of the need for a resentencing proceeding cannot render that officer responsible for a double jeopardy violation that occurs when that proceeding takes place.[6]

D.         *Qualified Immunity*

Defendants claim that they are entitled to qualified immunity with respect to Rivera's due process claim. The main problem their argument faces is *Vincent v. Yelich*, in which the Second Circuit held that "*Earley I* itself, decided on June 9, 2006, did clearly establish the unconstitutionality of the administrative imposition or enforcement of postrelease conditions that were not judicially imposed." 718 F.3d at 160; *accord Betances*, 519 F. App'x at 41.

In their opening brief on this motion, Defendants essentially disagreed with the Second Circuit, and suggested that I await Supreme Court review of it. *See* Def. Br. 16 ("*Betances* and *Vincent*, in appearing to contradict the Circuit's own precedent on the subject, are now the subject of a petition for United States Supreme Court review."). The reply memorandum, written after that review was denied, asserts only that the qualified immunity issue can be decided on the facts of this case, "no matter what the law may be." Def. Reply (ECF No. 47) 6. The argument goes on to repeat the claim that Rivera was not even subjected to

---

[6]     At oral argument, plaintiff's counsel stated, "I'm not suggesting that they shouldn't have referred it to the sentencing judge. That was the remedy for their *Earley* violations but they simply made that referral too late knowing that her determinate sentence was going to expire." January 23, 2015, Tr. at 21. He went on to concede that there would have been no double jeopardy violation if the judge had ruled on the referral in the several weeks between the time it was made and the time Rivera's determinate sentence expired. *See id.* It would be anomalous indeed if a state officer's liability for a constitutional tort turned solely on how long a judge took to act on the officer's lawful referral.
        Moreover, it was not clearly established at the time Tracy wrote the October 14, 2008 letter that a *judicially*-imposed term of PRS would violate Rivera's rights. No case established that until *Williams* in 2010. Thus, even if there were circumstances in which anyone besides the sentencing judge could be responsible for a double jeopardy violation, Defendants in this case would be entitled to qualified immunity.

11

an administratively-imposed term of PRS. I reject that contention here for the same reasons I rejected it above.

Finally, Defendants contend that even if they in fact subjected Rivera to an administratively-imposed term of PRS after *Earley I* made it clear that such action violates federal due process guarantees, the fact that they did so pursuant to a legislative scheme entitles them to qualified immunity. But once the federal appeals court for the circuit in which a state official operates has ruled that specific conduct violates due process, that conduct violates due process whether or not it is engaged in pursuant to state law. *See Vincent*, 718 F.3d at 170.

## CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss is granted in part and denied in part. Rivera's due process-based claim shall proceed; to the extent her claim is based on an alleged violation of the Double Jeopardy Clause, it is dismissed.

So ordered.


John Gleeson, U.S.D.J.


Dated: February 11, 2015
      Brooklyn, New York